BLUE RIVER PLACER MINING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6299.   Promulgated September 22, 1927.

Value to be used in computing depreciation of property acquired by gift determined.

*James Grafton Rogers, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

This appeal is taken from the determination by the Commissioner of a deficiency of $2,105.42 in income taxes for the calendar year 1921. It is alleged that respondent refused to allow sufficient depreciation on a certain dredge owned by petitioner.

FINDINGS OF FACT.

Petitioner is a Colorado corporation with principal offices at Colorado Springs, and is the lessee of certain placer gold-mining property in Summit County, Colo., in the operation of which a floating dredge is used. The property, formally leased to petitioner by the Long Island Mining Co. under agreement dated February 10, 1921, consists of approximately 320 acres, comprising four and a fraction patented claims, and in 1918 contained approximately 9,000,000 cubic yards of dredgeable ground. It is bounded on the north and east by property of the Tonopah Placers Co., a dredging company, on the south by the local cemetery, and on the west by high ground, not dredgeable.

The mine was worked by means of a continuous bucket line dredge, especially erected upon and adapted to the particular property. The dredge floats in an artificial pond of water, picks up the gravel in an endless chain of buckets, and carries it onto the boat, where it is washed and the gold separated.

In the year 1918 the dredge in question was constructed upon the property subsequently leased to petitioner by a partnership composed of Mark G. Evans and W. P. Hammon. In 1919 or 1920, in con-

sideration of an exchange of other property of equal or greater value. Hammon transferred his interest to Evans. During 1918, 1919, and 1920 the dredge was unsuccessfully operated by successive lessees. In the fall of 1920 Evans arranged with his son-in-law, W. J. Radford, an experienced mining engineer, to take over the operation of this dredge for the benefit of his (Evans') family, it being understood that a corporation would be organized for the purpose and that Evans would donate and convey the dredge to it. The petitioner was incorporated January 12, 1921, and its capital stock was issued in equal proportions to W. J. Radford, Olive E. Radford, Mrs. Frank Shaw and Mrs. Mark G. Evans, who were respectively the son-in-law, daughters, and wife of Mark G. Evans. Evans, himself, owned no interest in the corporation. The dredge was donated to petitioner by a letter dated January 12, 1921, and formally accepted the same date by resolution of the board of directors of petitioner. A formal transfer was effected by deed reciting a nominal consideration of $10, in July, 1921.

In the fall of 1920, when the gift of the dredge was suggested by Evans, the dredge was in as good condition as when built, some wear and tear excepted. Some changes were necessary because of the improper design of the boat for operation on the particular property. The necessary changes were made prior to the incorporation of petitioner, which assumed the indebtedness incurred for that purpose. At the time of incorporation of petitioner all other placer mining property in that locality had been worked out or was being worked by other companies.

The original cost of the dredge was $189,270.23. Additions to the dredge made by the donor amounted to $5,500. The cost of changes in the design of the boat, made by the incorporators of the petitioner prior to incorporation, and later assumed by it, was $14,500. The total cost of the dredge at the beginning of operations by petitioner was $209,270.23. The fair value of the dredge at the beginning of the taxable year was not less than its cost. The salvage value of the dredge is $10,000. The total dredgeable gravel originally in the property was 9,000,000 cubic yards. The amount of gravel dredged in 1921 was 1,088,029 cubic yards. The rate of depreciation on the dredge per cubic yard of gravel extracted is 2.214 cents.

OPINION.

VAN FOSSAN: At the hearing of this case counsel for respondent conceded that the dredge was a depreciable asset; that the depreciation should be based on the probable life of the dredgeable land in the particular property; that the dredge originally cost $189,270.23; that in the year 1921 there were excavated 1,088,029 cubic yards of

gravel; that in the event petitioner's contention is sustained, the factor of depreciation is 2.214 cents per cubic yard dredged.

It was proved that, in addition to the original cost to donor, $20,000 was expended on the dredge prior to operation by petitioner, and that its salvage value at conclusion of operation would be $10,000.

Under these facts counsel for respondent contends that the basis for determining depreciation should be the fair value of the property at date of acquisition.

Petitioner contends on the other hand that in such a situation depreciation on the dredge should be based on the cost to donor plus costs to donee.

In the instant case it falls out that it is immaterial in determining the amount of the tax which view is taken. The uncontradicted evidence is that the dredge was worth in 1921 at least as much as the original cost and it was so capitalized by petitioner.

The basic amount which should be used in determining depreciation is $209,270.23. The salvage value is $10,000. The yardage removed and the factor to be applied thereto are stated in the findings of fact.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*